·NINE PACKAGES OF LINEN (UNITED STATES v.). See Case No. 15,884.

## Case No. 10,273.

### NINE THOUSAND SIX HUNDRED AND EIGHTY-ONE DRY OX HIDES.

[6 Ben. 199; 7 Am. Law Rev. 576; 16 Int. Rev. Rec. 166.] [1]

District Court, E. D. New York. Oct., 1872.

FREIGHT — WEIGHT BY INVOICE — EXPENSE OF WEIGHING—COSTS.

1. The owner of a bark filed a libel against her cargo of hides to recover freight. The hides were shipped in Buenos Ayres, to be delivered at New York on payment of freight at so much per pound. They arrived in good order, and were tendered to the consignee, to be delivered on payment of $1,515 79, freight. This amount was arrived at by taking the weight stated in the invoice and entry presented by the consignee at the custom house on his entry of the goods. The bill of lading did not state any weight. As the consignee refused to pay the amount claimed, the owner of the ship filed a libel against the hides to recover the freight, and the consignee gave a stipulation for value, and took them. On the trial, the consignee proved an actual weighing of the hides after they were delivered, in accordance with which the freight would be $1,417 01: *Held*, that, in the absence of a statement of weights in the bill of lading, the ship was entitled to freight only on the weight delivered, and that the weight stated in the invoice and entry was not conclusive on the consignee;

2. The ship is bound to weigh the cargo, whenever a weighing is necessary to enable her to compute her freight;

[Cited in Henderson v. Three Hundred Tons of Iron Ore, 38 Fed. 39.]

3. The ship was entitled to a decree for the amount of freight calculated on the weight proved to have been actually delivered, viz., $1,417 01.

4. And it appearing that the answer admitted that freight was due, but that the amount admitted to be due was not tendered or paid into court: *Held*, that the libellants were entitled to costs.

In admiralty.

Beebe, Donohue & Cooke, for libellants.
Wakeman & Latting, for claimants.

BENEDICT, District Judge. The facts out of which the present controversy arose are not in dispute. Garden B. Perry shipped on board the bark Ada Gray, then lying at Buenos Ayres, a quantity of hides, to be transported thence to the port of New York.

The hides were taken on board by number, and not by weight, and a bill of lading was given which acknowledged the receipt on board of 9,681 dry ox and cow hides and 478 dry kip skins, to be delivered at New York to Brown Bros. & Co., or their assigns, "he or they paying freight for the said hides and kips, five-eighths of a cent, United States gold, per pound, with five per cent. primage and average accustomed."

The voyage was duly performed, and the

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 7 Am. Law Rev. 576, contains only a partial report.]

hides arrived in New York in like good order and condition as shipped, and their delivery was tendered to the proper consignees upon payment of the sum of $1,515.79, as freight and primage. This amount was arrived at by taking for a basis of calculation 230,977 lbs., the weight shown in the invoice and entry of the hides presented by the consignees at the custom house, and according to which they paid the duties.

The right of the ship to demand freight so calculated was disputed by the consignee, who insisted that the proper mode of calculation was to take the weight of the hides landed, as ascertained by an actual weighing. The freight, when so calculated, they offered to pay on receiving the cargo. In order to obviate the difficulty, which thus arose in the discharging of the ship, this action in rem against the hides was instituted by the owners of the ship, to enforce a lien for the amount of freight as calculated therein. The consignees intervened, and, upon giving a stipulation for value in a sufficient amount, received the hides. They then joined issue with the libellant, and the dispute is thus before this court for its determination. The rights of the parties in the premises do not appear to me to be in doubt.

"The net quantity," says McLachlan (page 392), "ascertained by the queen's scales or bushel at the port of delivery, is the measure of freight payable by the merchant." The contract of a bill of lading like the present, is that the freight is to be paid on the quantity shipped, carried and delivered. Gibson v. Sturge, 10 Exch. 621. See German, Merc. Law, book 5, pt. 5, art. 621. It is upon this understanding of the contract expressed in a bill of lading that, when living animals are to be transported, and some die, freight is paid only on those which arrive. Howland v. The Lavinia [Case No. 6,797]. So also the weight of sugars and of molasses at delivery, which is always less than the weight shipped, determines the amount of freight. Abb. Shipp. 430.

The usage of this port, as shown by the evidence, conforms to this understanding of the contract, for it is proved not to be customary to pay freight on hides by the invoice weight, but according to the weight delivered, as the same may be agreed on, or ascertained by weighing. Furthermore, in this instance, the cargo was shipped by number and to be delivered by number. It does not appear to have been weighed when shipped, and no statement of weight is made in the bill of lading, although the freight was agreed to be paid by weight, and although such a statement made in the bill of lading would doubtless have furnished the basis for the calculation of freight. German, Merc. Law, art. 658, bk. 5, pt. 5. This omission to ascertain the weight at the shipment warrants the inference, that the parties understood that the weight at delivery would determine the amount of the freight.

Unless, then, the weight by which the duties were paid, and to which the shipowner resorted for the basis of his calculation of the freight, was the correct weight of hides delivered, the position taken by the libellant cannot be upheld.

It is, indeed, true, that in many countries the weight of cargo, by which duties are paid, is the weight upon which freight is calculated. But I think it will be found that in such cases there is an actual weighing required by law, and made by officials according to law. The custom house weight in such cases is therefore the actual weight delivered, as legally ascertained. But here there is no such ascertainment of the actual weight. The sworn statement of the consignee, coupled with the invoice, furnishes the basis upon which duties are paid; and if, in a suit for freight, the action of the consignee in respect to the duties be competent evidence, as an admission, to show the weight of hides landed, it is not conclusive.

In this action, therefore, the actual weight of hides landed is open to be shown. Accordingly, it has been made to appear by an actual weighing of the hides, which the consignee caused to be made after his receipt of the cargo, and when there is no reason to suppose that any change in weight had occurred, that the weight of hides delivered was 224,002 lbs. instead of 230,977 lbs. From which it results that the freight and primage due on delivery of the hides was $1,417.01 instead of the $1,515.17, which the shipowner had demanded.

A further question has been discussed in this cause, and that is, upon whom rests the obligation to weigh the cargo, under a bill of lading like the present? My opinion is that, in the absence of an agreement to the contrary, the ship is bound to weigh the cargo whenever a weighing is necessary to enable her to compute the amount of her freight. "The person who wants to ascertain the quantity must pay the expense of weighing." Willis, J., Coulthurst v. Sweet, L. R. 1 C. P. 654. See, also, The Treasurer [Case No. 14,159]. The same rule appears to prevail upon the continent of Europe. Thus it was adjudged by the tribunal of commerce of Havre, in 1861, that when the freight can only be determined by weighing the cargo, the shipmaster must bear the expense. Recueil de Jurisprudence Commerciale Maritime du Havre, 1861, pt. 1, p. 135. On the contrary, when a weighing is not necessary for a determination of the freight, as is the case when the freight is made payable by the weight given in the bill of lading, the expenses of weighing are adjudged to be borne by the owner of the goods. Judgment of Tribunal of Nantes, 1863, note 64, p. 60. See Caumont, Traité Affraitement, 252; also, Traité Fret, 89. There remains to indicate the proper decree to be made in this action, under the views of the law above expressed. The prayer of the consignee is that the libel be dismissed with costs, upon the payment of the freight by the consignee. But I am of the opinion that the right to recover the freight, if imperfect at the commencement of the action, may be considered to have become perfect upon the subsequent receipt by the consignee of the whole number of hides in good order; and inasmuch as by giving the stipulation for value, a stipulation was substituted for the property, the interest of the shipowner in the cargo should be considered as transferred to the proceeds of the stipulation. The libellants should therefore take a decree directing their freight, conceded to be due them, to be paid out of the proceeds of the stipulation. Such a practice renders a proceeding like the present very convenient in cases of dispute in regard to freight, as it enables the consignee to receive his cargo promptly without paying a demand which he deems illegal, and enables the shipowner to obtain a security for his freight which, while it fully protects his rights, saves risk and expenses in regard to the cargo. The decree will therefore be in favor of the libellant for the sum of $1,417.01, gold, with interest from the time of landing the cargo, less, however, the taxed costs of the claimants in this action.

Clearly the libellants are not entitled to costs, for they wholly fail to maintain the position taken by them. On the other hand they should pay costs, because, if the cargo had not been bonded, a dismissal of the libel with costs would have been the result of the action; and the claimants should not suffer by reason of having substituted a stipulation in place of the property, as that course was equally for the advantage of the libellants and the claimants.

The case was afterwards opened for further evidence bearing on the question of costs, on which the following opinion was rendered:

BENEDICT, District Judge. This case having been opened for further testimony bearing upon the question of costs, and it now appearing that before the filing of the libel the merchandise in question had passed into the control of the claimants, and it also appearing that the answer of the claimants admits that freight was due at the filing of the libel, and it also appearing that the amount of such freight, when ascertained, was not paid into court pursuant to the rules of court, it is therefore ordered that the decree in this case be for the amount of freight heretofore found due, namely, $1,417.01, gold, with interest, and that the libellants recover also their costs of this action, to be taxed.

NINE TRUNKS (UNITED STATES v.). See Cases Nos. 15,885 and 15,886.

NINETTA, The (KNOX v.). See Case No. 7,912.